# IN THE COURT OF APPEALS OF IOWA

No. 12-1972
Filed April 30, 2014

**RICHARD LEROY PARKER,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Lawrence H. Fautsch (pretrial rulings) and Michael J. Shubatt (trial), Judges.

Richard Parker appeals from the denial of his application for postconviction relief. **AFFIRMED.**

Steven J. Drahozal of Drahozal Law Office, P.C., Dubuque, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, Ralph Potter, County Attorney, and Christine O. Corken, Assistant County Attorney, for appellee State.

Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, J.**

Richard Parker appeals from the denial of his application for postconviction relief in which he raised claims of ineffective assistance of trial counsel and prosecutorial misconduct. While Parker raised other issues at his postconviction trial, on appeal he challenges the district court's rulings concerning his *Brady* claims and the court's refusal to require the withdrawal of the State's attorney. Because we find Parker has failed to establish either a *Brady* violation or ineffective assistance of counsel, and we find no error in the court's denial of Parker's motion to disqualify the prosecutor, we affirm.

**I. Background Facts and Proceedings.**

At Parker's criminal trial for second-degree robbery, there was testimony that DNA tests were conducted from swabs taken from a car used during the robbery. The car was a stolen vehicle. The evidence elicited at the criminal trial was that test results were not available until just before trial, and the swabs only provided partial DNA profiles. Defense counsel cross-examined law enforcement officers and argued strenuously that no DNA connected Parker to the vehicle. Parker testified in his own defense. He was convicted of second-degree robbery.

On direct appeal, this court remanded for a new trial because evidence of Parker's prior drug convictions was improperly admitted. *See State v. Parker*, No. 05-0588, 2007 WL 465655, at *3 (Iowa Ct. App. Feb. 14, 2007).

On further review, the Iowa Supreme Court vacated this court's decision and affirmed Parker's conviction. *State v. Parker*, 747 N.W.2d 196, 213 (Iowa 2008). The supreme court summarized the evidence presented at trial:

Richard Parker was convicted by a jury of second-degree robbery and sentenced as an habitual offender. The crime involved a bank robbery that took place at American Trust and Savings Bank in Dubuque shortly after 3 p.m. on July 14, 2004. The evidence at trial was sufficient to establish that Parker entered the bank, handed a bank teller a note, and demanded money. The teller described Parker as a black man wearing a hat, wig, and latex gloves, with a distinctive mark on his cheek. She gave Parker money from the counter drawer, which he placed in a black bag with green lettering on it.

The branch manager of the bank witnessed the robbery from her office. She observed the robber leave the bank, enter a blue Chevrolet Celebrity four-door sedan, and drive away. She recorded the make, model, and license plate number of the vehicle.

A customer located at the drive-through area of the bank recognized the situation as a robbery and attempted to follow the blue getaway vehicle. His pursuit, however, was short-lived. Just as the customer pulled out of the drive-through area of the bank, a red Chevrolet Blazer pulled out in front of him and impeded his travel. The driver of the red Blazer then removed the keys of the vehicle from the ignition and exited her vehicle. Consequently, the customer's pursuit ended almost as quickly as it began.

A short time later, law enforcement officers stopped a red Blazer driven by Inger Hall-Smith. A package of latex gloves similar to the gloves worn by the robber was found in the vehicle. During the stop, Hall-Smith was questioned by an officer about her role in obstructing the pursuit by the customer. Hall-Smith responded by describing the event as a "bank robbery," even though the officer had not referred to the incident as a bank robbery.

Sometime prior to 4 p.m., a Dubuque homeowner was mowing her lawn when Parker drove by in a vehicle matching the description of the getaway car. He stopped to ask for directions out of the subdivision in which the homeowner resided. There was only one road in and out of the subdivision, and the homeowner gave Parker the directions. The homeowner noticed a dark mark on Parker's face.

Shortly before 4 p.m., a man who lived on a farm outside of Dubuque noticed Parker near a disabled blue car on the side of the road near his farm. The car had steam coming from the engine. Parker approached the farmer and asked for a ride. The farmer declined to help. However, another man driving a truck soon came upon the scene and gave Parker a ride into Dubuque. The driver of the truck noticed the man had makeup on his face and carried a black bag with green lettering.

Later that afternoon, police located the blue Celebrity getaway vehicle near the farm outside of Dubuque. They also

found a marked $100 bill from American Trust and Savings Bank inside the vehicle.

On the evening of August 26, approximately six weeks following the robbery, Parker appeared unannounced at the Waterloo residence of James Hall, Jr., an attorney and brother of Hall–Smith, the driver of the red Blazer who prevented the witness from pursuing Parker as he drove away from the bank. Hall was acquainted with Parker and was aware his sister had been arrested for her participation in the robbery. Hall had represented Parker in the past regarding some speeding violations.

During the course of the evening of socialization and conversation, Parker detailed his participation in the bank robbery to Hall and apologized for involving Hall's sister. He also told Hall he had committed other bank robberies in the past and had plans to rob a bank in Chicago. Parker also made other incriminating statements.

Parker spent the night at Hall's house. The next day, Hall left his house and informed police that Parker could be found at his residence. He told police that Parker was not his client. Parker was subsequently arrested by police at Hall's residence.

. . . .

At trial, the various witnesses to the facts and circumstances surrounding the robbery testified. The bank teller, the homeowner who was mowing the lawn, and the Good Samaritan truck driver all positively identified Parker. Hall also testified to the incriminating statements made by Parker.

Parker testified in his defense and advanced an alibi defense. He claimed he was in Chicago visiting his family on the day of the bank robbery. Parker also testified during direct examination, without elaboration, that he had never been charged with the crimes of theft, robbery, or burglary. No family members testified in support of his alibi.

On cross-examination, the State elicited from Parker that he had actually been charged with first-degree burglary in 1993. After Parker explained the offense involved an incident in which he broke the window of a vehicle, the prosecutor asked if he had any other convictions on his record.

*Id.* at 200-02. Despite a "prompt objection by Parker's attorney," the district court allowed the prosecutor to elicit from Parker he had two prior drug convictions. *Id.* at 202.

The supreme court found the State was permitted to impeach Parker by asking about his prior charge for burglary. *Id.* at 207. However, the prior drug

convictions were improperly admitted because the questions about those charges were beyond the scope of direct examination. *Id.* at 208. Nonetheless, the court affirmed Parker's conviction finding the error was harmless because the conviction "was clearly based on overwhelming evidence of Parker's guilt." *Id.* at 210.

Parker filed an application for postconviction relief (PCR) asserting numerous claims of prosecutorial misconduct and of ineffective assistance of trial counsel. Parker asserted a lab report prepared on December 4, 2004—two days before trial was to begin—excluded him as a contributor of DNA in the stolen car. He asserted this evidence was suppressed by the criminal trial prosecutor. He also contended his criminal trial counsel was ineffective in failing to properly investigate the DNA evidence.[1]

The district court denied the application for PCR and Parker appeals.

## II. Scope and Standard of Review.

"We typically review postconviction relief proceedings on error. However, when the applicant asserts claims of a constitutional nature, our review is de novo. Thus, we review claims of ineffective assistance of counsel de novo. In

---

[1] Parker also asserted his criminal trial counsel was ineffective in not objecting to the in-court identification of him made by three prosecution witnesses; allowing improper photo identification by the same three witnesses; failing to object to questioning that violated a pre-trial motion in limine; failing to move for a mistrial; failing to object to the use of the hat with dreadlocks; failing to impeach Officer Baxter concerning the warrant application; failing to call alibi witnesses; failing to investigate the DNA evidence collected by the State; and failing to otherwise properly prepare for trial by deposing witnesses, investigating Parker's criminal background, and other matters. He also raised several claims of prosecutorial misconduct, including that the assistant county attorney who prosecuted him engaged in a discovery violation concerning a hat with dreadlocks that was introduced during Parker's cross-examination at his criminal trial; misrepresented facts on a warrant application; and failed to inform the defense that a witness recanted his statements incriminating Parker. This appeal, however, focuses only on the lab report that allegedly was not provided to the defense.

addition, we give weight to the lower court's findings concerning witness credibility." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001) (citations omitted).

### III. Discussion.

After a two-day trial on the PCR application, the district court issued its ruling denying relief. In its ruling, the district court indicated Parker could not litigate his ineffective-assistance-of-counsel claims in the postconviction proceeding because other ineffectiveness claims were decided on direct appeal. This ruling is contrary to statutory and case law. *See* Iowa Code § 814.7; *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010); *accord State v. Clark*, 814 N.W.2d 551, 567 (Iowa 2012). However, the district court, in fact, went on to consider each of Parker's ineffectiveness claims raised in his postconviction application "for the purpose of judicial efficiency" and rejected them. We do not reach the claims presented to the postconviction court but not argued on appeal, finding those claims have been waived. *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [the appellant] might have made and then search for legal authority and comb the record for facts to support such arguments."); *see also* Iowa R. App. P. 6.903(2)(g)(3) (requiring an appellate brief to "contain the appellant's contentions and the reasons for them with citations to the authorities relied on" and stating "[f]ailure to cite authority in support of an issue may be deemed waiver of that issue").

Addressing the crux of Parker's claim concerning the DNA report, the court concluded:

The prosecutorial misconduct claims fail on their merits. Parker's first complaint is that Assistant County Attorney Corken somehow violated his rights by withholding DNA evidence. The evidence in question was a lab test that admittedly was not completed and produced to the State until shortly before the trial. The test, which was based on partial DNA samples obtained from a car Parker was alleged to have driven, excluded Parker as a match for those samples. Defense counsel Paul Jensen testified at trial and in his deposition . . . that he believed he was told about the DNA results prior to trial. The Court does not consider this to be prosecutorial misconduct, even if the required written notice was not served. Even if it was misconduct, the Court fails to see the prejudice to Parker. There was no DNA evidence connecting him to the car in question. His attorney pointed that fact out to the jury. The added value (if any) of the test excluding him would have been negligible at best, particularly in light of the overwhelming evidence against Parker.

The district court specifically found Attorney Jensen's testimony to be credible.

A. *Brady violation.*[2] Upon our de novo review, we, too, conclude Parker has failed to establish a *Brady* violation. The essence of Parker's claim is that while his counsel argued there was no DNA evidence connecting him to the car used in the robbery, he was not able to take full advantage of the DNA lab report. That lab report stated in part: "DNA analysis performed on swab B2 developed a partial profile. . . . RICHARD PARKER (A) is eliminated as a possible contributor to this partial profile (B2). DNA analysis was unsuccessfully attempted on the remaining three swabs." He contends his defense would have been stronger had he been able to assert he was eliminated as a contributor to DNA in the car, rather than that no DNA connected him to the car.

---

[2] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

"To establish a *Brady* violation has occurred, [the claimant] must prove by a preponderance of the evidence (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt." *DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011) (citations and internal quotation marks omitted). While the prosecutor has a duty to learn of any favorable evidence known to those acting on the government's behalf in the case, evidence is not considered suppressed if the defendant either knew or should have known of the essential facts permitting him to take advantage of the evidence. *Id.*

> Due process is only denied when the favorable, suppressed evidence is material to the issue of guilt. The Supreme Court stated evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

*Id.* at 105 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Here, Parker's defense attorney testified at the PCR trial he had been informed by the assistant county attorney that the DNA analysis had been completed and no DNA connected Parker to the vehicle used in the robbery. Because evidence is not considered suppressed if the defendant either knew or should have known of the essential facts permitting him to take advantage of the evidence, here there is no evidence "suppressed." *See State v. Clark*, 814 N.W.2d 551, 563 (Iowa 2012).

Moreover, unlike the situation in *DeSimone*, 803 N.W.2d at 105, where the undisclosed evidence undermined the minimal evidence supporting the

conviction, we are not convinced the lab report undermines confidence in the outcome.

> Parker was positively identified as the bank robber by the bank teller, and two witnesses positively identified him as driving the getaway car during his circuitous escape from the bank. Money from the bank was also found in the car. Although Parker attempted to disguise his appearance during the robbery, none of the witnesses had any difficulty identifying him as the bank robber and driver of the getaway car. Moreover, Parker admitted to [Hall that he committed the robbery. Additionally, he failed to produce any witness to corroborate his alibi defense.

*Parker*, 747 N.W.2d at 210. That his DNA was excluded from DNA found in a stolen car—especially where there was evidence the robber was wearing gloves—does not undermine our confidence of the outcome of the case.

*B. Ineffective assistance of counsel.* As for Parker's ineffectiveness claim, Parker must establish both that (1) trial counsel failed in an essential duty and (2) prejudice resulted. *Ledezma*, 626 N.W.2d at 142. We presume the attorney performed competently. *Id.* "[I]neffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." *Id.* "Counsel is required to conduct a reasonable investigation or make reasonable decisions that make a particular investigation unnecessary." *Id.* at 145.

As noted above, Attorney Jensen testified he was informed the lab results of DNA swabs taken from the get-away vehicle did not implicate Parker. Attorney Jensen did not remember if he received the report prior to trial. Jensen testified he did not do an independent investigation of the DNA "because it showed that there was no DNA evidence that connected [Parker] to the car." Parker (who represented himself at the PCR proceeding) asked why Jensen

would not conduct his own analysis and Jensen responded, "[W]hen a defense attorney gets a DNA report and the report says that it cannot connect his client up with a car, that's good for my client. No, I'm not going to investigate that further." We cannot say this strategy was unreasonable.

*C. Removal of State's attorney.* Before the PCR trial, Parker filed a motion to disqualify and remove the prosecutor on the ground he wanted to depose her to attempt to gain evidence in support of his PCR application. The postconviction court denied his application to disqualify the prosecutor. Parker was denied permission to seek interlocutory appeal. Parker, acting as his own attorney, deposed his trial counsel. Attorney Jensen testified he received a telephone call from the assistant county attorney prior to trial informing him of the substance of the DNA report—no DNA connected Parker to the car. He could not recall if he had received the lab report. This deposition testimony is consistent with the prosecutor's professional statement to the district court. While we are not convinced that Ms. Corken could not have been deposed, Parker has not shown he was prejudiced by not being able to depose her. Moreover, Parker did not attempt to call Ms. Corken to testify. We find no error in the court's denial of Parker's motion to disqualify her. *Cf. State v. King*, 256 N.W. 1, 15 (Iowa 1977) ("Although a prosecutor should withdraw upon finding it necessary to testify on behalf of the State, he has no such duty when called as a defense witness."); *accord State v. Fitz*, 256 N.W.2d 896, 901 (Iowa 1978).

We therefore affirm.

**AFFIRMED.**