# IN THE COURT OF APPEALS OF IOWA

No. 16-2155
Filed February 21, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICHAEL C. HOUSTON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

        Michael Houston appeals his convictions of second-degree robbery as a habitual offender and interference with official acts.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

Michael Houston appeals his convictions of second-degree robbery as a habitual offender and interference with official acts. He contends (1) the evidence presented was insufficient to support one of the alternative theories of the second-degree robbery charge; (2) the district court erred in permitting the State to elicit irrelevant and prejudicial testimony regarding his income and employment and in allowing the State to use his financial affidavit to impeach him; (3) the district court erred in permitting the State to question him about the contents of letters he sent to witnesses, insinuating his wrongdoing in connection therewith; and (4) the prosecutor's alleged argumentative remarks, disparaging examination of him at trial, and statements in closing argument amounted to prosecutorial error resulting in a denial of his right to a fair trial. Houston also argues his counsel rendered ineffective assistance in failing to properly object to the evidence, questioning, and remarks falling under arguments two through four.

## I. Background Facts and Proceedings

Based upon the evidence presented, a reasonable jury could have found the following facts. On July 3, 2016, at approximately 11:30 p.m., Merle Wilson was in his vehicle in the dark parking lot of a closed restaurant. He was waiting to pick up his granddaughter, who was working the closing shift at the restaurant. Wilson played games on his phone while waiting. Wilson heard a tap on his window and turned to observe what appeared to be a sawed-off shotgun pointing at his head. The wielder, Houston, ordered Wilson out of the car, and Wilson complied. Houston continued to point the gun-like object at Wilson and ordered, "Give me your fucking phone." Wilson declined, upon which Houston jabbed

Wilson in the stomach with the object and advised, "You're going to get it." After a few jabs, Wilson attempted to grab the object[1] from Houston, and a tussle ensued. Seconds later, Houston struck Wilson on the back of the head with a flashlight, and Wilson fell to the ground. When Wilson attempted to get up, Houston struck him with the flashlight a second time. At this point, a restaurant employee, who was sitting in a separate vehicle located next to Wilson's, intervened, and Houston left the scene. Wilson called the police.

Officer Ryan Neumann of the Des Moines Police Department received a description of the suspect and canvassed the area. He located Houston, who matched the description, in an alley. Neumann identified himself as a police officer and advised Houston to put his hands on a nearby fence. Houston moved toward Neumann with a metal object in his hand and advised, "You're going to have to shoot me." Due to Houston's subsequent movements, Neumann pepper sprayed Houston, after which Houston attempted to flee. Another officer joined Neumann in his chase of Houston and threatened Houston with the use of his taser, upon which Houston stopped, and the officers "went hands-on with" and secured him. Among other items found in the area and on Houston's person, the officers found an object resembling a sawed-off shotgun. Houston testified this object belonged to him, and he discarded it in the area upon his initial encounter with law enforcement.

Houston was charged by trial information with first-degree robbery and interference with official acts with a dangerous weapon. The district court

---

[1] When Wilson touched the object he initially thought was a shotgun, he realized it was not a real firearm.

granted the State's subsequent motion to amend the trial information to include a habitual-offender enhancement. A jury found Houston guilty of the lesser-included offenses of second-degree robbery and interference with official acts without a dangerous weapon. Houston subsequently stipulated to his status as a habitual offender. The district court denied Houston's motion for a new trial and motion in arrest of judgment. Houston appealed following the imposition of sentence.

## II.    Sufficiency of the Evidence

Houston argues he is entitled to a new trial because the jury returned a general verdict on a marshalling instruction that allowed the jury to consider multiple theories of culpability, one of which was unsupported by substantial evidence. He specifically contends the evidence was insufficient to establish that he inflicted a serious injury, and because there is no way of knowing which theory of culpability the jury accepted, he should be afforded a new trial. The State contests error preservation on this issue, arguing Houston did not object to the jury instruction with "concrete particularity." We elect to bypass the State's error-preservation argument and proceed to the merits. *See, e.g.*, *State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (bypassing an error-preservation issue and proceeding to the merits of the appeal).

The jury was instructed that "[a] serious injury is any bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement." *Cf.* Iowa Code § 702.18(1)(b) (2016). The term "bodily injury" was defined as any "physical pain, illness or any impairment of physical condition." *See State v. Gordon*, 560 N.W.2d 4, 6 (Iowa 1997) (quoting *State v.*

*McKee*, 312 N.W.2d 907, 913 (Iowa 1981)) (noting Iowa's adoption of the Model Penal Code's definition of bodily injury).

According to Wilson's testimony, he sustained two cuts on the back of his head. He testified at trial he continues to have a three-inch-long, "permanent crease" on the back of his head where he was wounded. Wilson's wife testified she has cut her husband's hair for approximately ten years and, as a result of Wilson's altercation with Houston, Wilson now has "a dent in the back of his head." Houston characterizes Wilson's injury as a mere scar and argues not all scars amount to a serious permanent disfigurement. We agree with Houston that scarring is not a "per se serious permanent disfigurement." *See State v. Hanes*, 790 N.W.2d 545, 554 (Iowa 2010). The appropriate practice, however, is to "leave it to the jury to determine whether a scar constitutes a serious permanent disfigurement." *Id.* We conclude there was sufficient evidence upon which the jury could have found Houston caused Wilson to suffer a serious injury. Therefore, we affirm the district court's denial of Houston's motions for judgment of acquittal.

## III. Evidentiary Rulings

### A. Houston's Employment and Financial Affidavit

During the State's cross-examination of Houston, it inquired into whether Houston was employed; Houston responded in the negative. The State returned to the subject later in its cross-examination and questioned Houston if his lack of employment means he does not make any money. Defense counsel objected to the question on relevance grounds. The objection was overruled. The State then presented Houston with a copy of his financial affidavit, which Houston

verified he signed under penalty of perjury. The State then proceeded to question Houston about his assertion on his financial affidavit that he does, in fact, have a job and works ten to fifteen hours per week. On redirect, Houston explained someone else filled out the document for him before he signed it, and he explained to that person that he does not have a job but he does tattoo work "sometimes here, sometimes there." In his explanation, Houston also implicitly revealed he was being represented at State expense when he indicated the person who filled out the affidavit for him might have been with the public defender's office. In closing argument, the State returned to the subject and emphasized Houston's misstatement on his financial affidavit reflected negatively on his credibility.

B.     Letters to Witnesses

On cross-examination, the State questioned Houston regarding letters he sent to two witnesses prior to trial. Houston's counsel objected to questioning regarding the letters on relevance grounds but, again, the objection was overruled. Upon questioning by the State, Houston stated he sent letters to two witnesses and advised them that he had inadvertently been provided with their addresses and social security numbers. On redirect examination, Houston explained he merely wanted to let these individuals know that he had accidently been provided with their personal information. The State returned to the subject on re-cross-examination and, through questioning, insinuated Houston engaged in wrongdoing by sending the letters rather than returning the information he received to his attorney. In closing argument, the State argued Houston's conduct in relation to the letters reflected poorly on his credibility:

> Not only that, credibility, believability. Remember the letter. He got possession of Social Security numbers by accident, inadvertently, from his lawyer who's defending him. And then he takes that and what does he do?
>
> He writes to the State witnesses who are going to come testify against him. And you know what he tells them? He says it's the courts that provided it to him. Seriously. Credibility, believability. Because that's his version; right?

Implicit in the State's efforts on this subject was that Houston was attempting to intimidate witnesses by advising them he possessed sensitive personal information.

C.      Discussion

Houston contends the foregoing was irrelevant and prejudicial. As to the evidence regarding his employment and financial affidavit, he specifically argues the elicited testimony was irrelevant to any material issue in the case and the questioning prejudiced him by intending to improperly portray him as a dishonest person. As to the questioning regarding the letters, Houston contends the State's questioning and argument improperly and prejudicially insinuated that he engaged in wrongdoing that was immaterial to the charged crime.

"Evidentiary rulings are generally reviewed for abuse of discretion." *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2017). "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Id.* (quoting *State v. Buenaventura*, 660 N.W.2d 38, 50 (Iowa 2003)). "If we find an abuse of discretion, we will only reverse if prejudice is shown." *Id.*

We agree with Houston that the subject matter of the cross-examination regarding his employment and income was irrelevant to any material issue in the

case, as it was wholly unrelated to the charged crime. *See* Iowa R. Evid. 5.401. *Compare State v. Roghair*, 353 N.W.2d 433, 434–35 (Iowa Ct. App. 1984) (concluding questioning of the defendant regarding his financial status as shown on his affidavit of indigency in a case involving the theft of a rifle "was irrelevant and immaterial to any matters in issue" where the defendant's financial status was generally unrelated to the charged crime), *with State v. Wixom*, 599 N.W.2d 481, 487 (Iowa Ct. App. 1999) (concluding evidence of indigency was relevant to cast doubt on defendant's assertion that he was not a drug dealer, which related to the charged offense), *and State v. Kane*, 492 N.W.2d 209, 210–11 (Iowa Ct. App. 1992) (distinguishing *Roghair* on the basis that "the relationship between Roghair's financial condition and his motives were far more attenuated than the evidence of Kane's financial need," which was "close-coupled" with Kane's possession of a substantial sum of currency shortly after a burglary). *See generally State v. Hill*, 243 N.W.2d 567, 571 (Iowa 1976) ("It is well settled . . . the right to impeach by prior inconsistent statements is not without limit. The subject of the inconsistent statement, if it is to be admissible, must be material and not collateral to the facts of the case.").

We also agree that the questioning regarding Houston's letters to State witnesses was wholly irrelevant to the case. *See* Iowa R. Evid. 5.401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is *of consequence to the determination of the action* more probable or less probable than it would be without the evidence" (emphasis added)). Because the challenged evidence and testimony was irrelevant, we conclude the district court abused its discretion in allowing it.

However, not all evidentiary errors require reversal. *See* Iowa R. Evid. 5.103(a); *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004). The real question in this case is whether the admission of this evidence resulted in prejudice to Houston. "[E]rror in an evidentiary ruling that is harmless may not be a basis for relief on appeal." *State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008). Under the harmless-error standard, when an abuse of discretion is found, we presume prejudice unless the contrary is affirmatively established. *Id.* "When a nonconstitutional error is claimed, as in this case, the test is whether the rights of the objecting party have been 'injuriously affected by the error' or whether the party has 'suffered a miscarriage of justice.'" *Id.* (quoting *Sullivan*, 679 N.W.2d at 29). The harmless-error analysis is broader than the prejudice assessment under rule 5.403. *See Sullivan*, 679 N.W.2d at 30. "It accepts that error has seeped into the trial, but does not allow the error to serve as grounds for reversal of the conviction or other relief if the overall circumstances affirmatively establish the error did not affect the substantive rights of the defendant." *Parker*, 747 N.W.2d at 209.

A variety of circumstances are considered in determining the existence of harmless error, one being "the existence of overwhelming evidence of guilt." *Id.* at 210. In this case, the convictions were clearly based on overwhelming evidence of Houston's guilt. We recognize that the jury's verdict necessarily turned upon its credibility determinations. Houston recognizes this as well and, accordingly, seems to argue that the improper evidence played a major role in the jury's obvious rejection of his version of the events that occurred on the night in question. But, in light of the evidence presented, Houston's version of the

events was illogical at best and, therefore, not credible. Houston testified he approached Wilson's vehicle on the night in question to get "a light" for a cigarette. After knocking on Wilson's car window, according to Houston, "things happened extremely quickly," as Wilson exited his vehicle and "just grabbed at" and assaulted Houston. Houston denied ordering Wilson out of his vehicle, demanding his cell phone, or brandishing the wooden, gun-like object. Houston's actions during the ensuing tussle were purportedly made in self-defense. However, Houston admitted he had the wooden, gun-like object in his possession and that he discarded it upon his encounter with law enforcement because he "was worried." Houston was unable to provide a concrete explanation as to how Wilson was aware of the item. No cigarettes were found on Houston's person or among his belongings. Houston's self-serving account of his subsequent contact with law enforcement was also unconvincing.

Based on the existence of overwhelming evidence of guilt, we conclude the record affirmatively establishes that Houston's rights were not injuriously affected by the evidentiary errors and that he did not suffer a miscarriage of justice. We therefore decline to grant Houston's request for a new trial on these evidentiary issues. As to Houston's vague claims of ineffective assistance of counsel in relation to these evidentiary arguments, for the foregoing reasons, we conclude there is no reasonable probability that, but for the admission of the challenged evidence, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). As such, Houston is unable to establish the essential element of prejudice, and his claims of ineffective assistance of counsel fail. *See id.* at 687, 694.

## IV.    Prosecutorial Error[2]

Finally, Houston contends the prosecutor's alleged argumentative remarks, disparaging examination of him at trial, and statements in closing argument amounted to prosecutorial error resulting in a denial of his right to a fair trial.  Although defense counsel raised a number of relevance and argumentative objections regarding the challenged conduct of the prosecutor, a number of the challenged statements were not objected to and the prosecutorial-error argument was never raised at trial, nor was a motion for a mistrial ever forwarded.  Error was therefore not preserved for our review.  *See State v. Krogmann*, 804 N.W.2d 518, 526 (Iowa 2011); *State v. Dahlstrom*, 224 N.W.2d 443, 449 (Iowa 1974).  Houston, however, also raises the argument as an ineffective-assistance-of-counsel claim, claims of which are an exception to the traditional error-preservation rules.  *See State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010).

To prevail on his claim of ineffective assistance of counsel, Houston must prove by a preponderance of the evidence that (1) his counsel was deficient in failing to perform an essential duty and (2) prejudice resulted.  *Strickland*, 466 U.S. at 687; *State v. Harris*, 891 N.W.2d 182, 185 (Iowa 2017) (quoting *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006)).

---

[2] Claims relating to a prosecutor's behavior at trial have historically been referred to as prosecutorial misconduct.  However, our supreme court has adopted a distinction "between incidences of prosecutorial error and prosecutorial misconduct" and noted "[a] prosecutor who has committed error should not be described as committing misconduct."  *State v. Schlitter*, 881 N.W.2d 380, 393–94 (Iowa 2016).  "While the analysis for prosecutorial error and prosecutorial misconduct are the same, the phrase prosecutorial error should be used to describe instances of mistake, human error, or poor judgment."  *State v. Royer*, No. 16-1206, 2017 WL 4570431, at *2 n.1 (Iowa Ct. App. Oct. 11, 2017).

A number of the prosecutor's remarks that Houston now challenges were made absent objection. Absent an objection to those statements, the statements could not have been considered in relation to any motion for a mistrial. *See State v. Gibb*, 303 N.W.2d 673, 678 (Iowa 1981) ("[A] mistrial motion must be made when the grounds therefor first become apparent."); c*f. State v. Romeo*, 542 N.W.2d 543, 554 (Iowa 1996) (noting "defendant must make a timely and proper objection to the offending argument" and "a motion for new trial is not a substitute for objecting at the time of the offending conduct"). Claims of ineffective assistance of counsel raised on direct appeal are ordinarily preserved for postconviction-relief proceedings to allow full development of the facts surrounding counsel's conduct. *See State v. McNeal*, 867 N.W.2d 91, 105–06 (Iowa 2015). Here, trial counsel should be permitted the opportunity to explain the failure to object to the prosecutor's statements. There are potential strategic considerations in not lodging an objection, such as a desire to avoid drawing the jury's attention to a particular remark or line of questioning. We preserve this claim for postconviction-relief proceedings.

## V.     Conclusion

We affirm Houston's convictions of second-degree robbery and interference with official acts. We preserve for postconviction-relief proceedings Houston's ineffective-assistance-of-counsel claim relating to prosecutorial error.

**AFFIRMED.**